(No. 72606.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-lant, v. RODERICK ALLEN, Appellee.

*Opinion filed November 19, 1992.*

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Eileen Mary O'Neill and Theodore Fotios Burtzos, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Ann C. McCallister, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Defendant, Roderick Allen, was charged by indictment with attempted murder, armed violence predicated on aggravated battery, and aggravated battery causing great bodily harm for stabbing his father on September 7, 1986, in Cook County. (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1, 12—4(a), 33A—2.) Defendant presented a defense of self-defense. The jury was unable to reach a verdict on the charge of attempted murder and returned a guilty verdict on both the aggravated battery charge and the armed violence charge. Defendant was sentenced by the circuit court of Cook County to seven years' imprisonment in the Department of Corrections based on the armed violence conviction.

Defendant argues that he was improperly sentenced as a Class X offender. According to defendant, he was denied his constitutional guarantees of proportionate penalties and due process. This is because, even though

the jury failed to return a verdict on the Class X charge of attempted murder, defendant was still sentenced as a Class X offender when the Class 3 aggravated battery charge was enhanced to a Class X felony by application of the armed violence charge. The appellate court agreed that the enhancement of aggravated battery to armed violence under the circumstances of this case resulted in a denial of defendant's constitutional guarantee of proportionate penalties and due process. In the appellate court's opinion, the armed violence statute was improperly utilized to enhance less culpable conduct.

The appellate court remanded the cause to the circuit court and directed the circuit court to vacate the conviction for armed violence and sentence defendant based on the aggravated battery conviction. (218 Ill. App. 3d 930.) We allowed the State's petition for leave to appeal (134 Ill. 2d R. 315). For the reasons explained below, we reverse the appellate court and affirm the circuit court. Due to the conclusion we reach, a brief recitation of the facts is all that is necessary.

In 1986, defendant, then 27 years of age, lived with his father, Claude Allen, his mother and brother. Defendant and his father both agreed that the relationship between them was strained. On the evening of September 7, 1986, Claude and defendant engaged in a struggle. According to the State's version of events, defendant, without provocation and for no reason, stabbed Claude repeatedly with a knife. According to defendant's version of events, defendant tried to protect himself from an attack by his father. Defendant stated that Claude came at him with a kitchen knife, defendant and Claude struggled over the knife, defendant gained control of the knife, and Claude was stabbed during the course of the struggle.

## I

Defendant does not challenge his conviction for aggravated battery. Aggravated battery is committed when "[a] person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement." (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a).) Under the law as it presently stands, the only defense to a charge of aggravated battery is found in section 7—1 of the Criminal Code of 1961, which states in pertinent part:

"Use of Force in Defense of Person. A person is justified in the use of force *** which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." Ill. Rev. Stat. 1985, ch. 38, par. 7—1.

The jury rejected defendant's proffered defense of self-defense. The jury did not accept that defendant reasonably believed the force used was necessary to prevent imminent death or great bodily harm to defendant.

Defendant argues that his aggravated battery conviction is, under the facts of this case, not a proper predicate felony for armed violence. The Illinois armed violence statute reads: "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2.) Violation of the armed violence statute with a category I weapon (which includes a knife in excess of three inches) (Ill. Rev. Stat. 1985, ch. 38, par. 33A—1(b)) is a Class X felony. (Ill. Rev. Stat. 1985, ch. 38, par. 33A—3(a).) When the legislature first enacted the armed violence statute in 1967 (Ill. Rev. Stat. 1967, ch. 38, par. 33A—1), it enu-

merated which offenses it deemed to be proper predicate offenses; aggravated battery was specifically mentioned. (Ill. Rev. Stat. 1967, ch. 38, par. 33A—1.) The legislature amended the armed violence statute in 1978 to apply to *any* felony committed while armed with a dangerous weapon. Ill. Rev. Stat. 1985, ch. 38, par. 33A—2.

Defendant relies on the opinions of this court in *People v. Alejos* (1983), 97 Ill. 2d 502, *People v. Fernetti* (1984), 104 Ill. 2d 19, and *People v. Drakeford* (1990), 139 Ill. 2d 206, to support his argument that his aggravated battery conviction is not a proper predicate felony for armed violence.

In *Alejos* and *Drakeford*, this court determined that the presence of either of the statutory mitigating factors found in the voluntary manslaughter statute (Ill. Rev. Stat. 1985, ch. 38, par. 9—2) or the second degree murder statute (Ill. Rev. Stat. 1991, ch. 38, par. 9—2 (replaced voluntary manslaughter statute effective July 1, 1987)) rendered either offense an improper predicate felony for armed violence. When a jury returns a verdict of guilty of voluntary manslaughter or second degree murder, the jury acknowledges that the "defendant's act [was] motivated by either a sudden and intense passion resulting from serious provocation or an unreasonable but actual belief that the circumstances required the use of deadly force (Ill. Rev. Stat. 1979, ch. 38, pars. 9—2(a), (b))." *Alejos*, 97 Ill. 2d at 507; see *Fernetti*, 104 Ill. 2d at 24.

In *Fernetti*, the court applied the reasoning of *Alejos* to involuntary manslaughter (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a)), which "consists of the killing of a human being without any intent to do so." *Fernetti*, 104 Ill. 2d at 25.

In *Alejos*, the court used the term "unpremeditated" to describe voluntary manslaughter. The use of

the term unpremeditated in describing the offenses of voluntary manslaughter or second degree murder does not negate the intent to kill. When a jury returns a verdict of guilty of voluntary manslaughter or second degree murder, the jury has found that the defendant intended to kill the victim. The use of the term unpremeditated means that the intent to kill was mitigated by the existence of either a sudden and intense passion or imperfect self-defense. It is the presence of either of these statutory mitigating factors that reduces an unlawful homicide from murder to voluntary manslaughter or second degree murder; it is not the absence of an intent to kill.

In *Alejos*, the court stated: "The stiff punishment mandated by the armed-violence provision is intended not only to punish the criminal and protect society from him but also to deter his conduct—that of carrying the weapon while committing a felony." (*Alejos*, 97 Ill. 2d at 509.) The court in *Drakeford* noted that "[t]he legislature passed the armed violence statute with the purpose of deterring persons from carrying dangerous weapons when they commit a felony." (*Drakeford*, 139 Ill. 2d at 216.) Armed violence should not be predicated on conduct which by its nature is undeterrable. Since the existence of a sudden and intense passion or an actual but unreasonable belief in the need to use force to defend oneself may not be deterred, armed violence should not be predicated on such conduct.

Defendant argues that his actions were the result of a mitigated mental state: defendant contends that he was motivated by a sudden and intense passion or by an actual but unreasonable belief in the need to use force for self-defense when he stabbed the victim. Defendant asserts that, had the victim died, the existence of either mental state, if believed by the jury,

would have resulted in a conviction of voluntary manslaughter or second degree murder. Under *Alejos* and *Drakeford,* the State could not then seek to secure a conviction of armed violence based on either of these offenses.

Defendant urges this court to apply the rationale of *Alejos* beyond the context of a homicide committed with a mitigated mental state. Specifically, defendant urges this court to recognize that aggravated battery may be committed with the identical mitigated mental state which exists in voluntary manslaughter or second degree murder. According to defendant, if the mental state cannot be deterred, then neither can the carrying of a weapon. Since this court has precluded the State from predicating armed violence on either voluntary manslaughter or second degree murder because the mental state of these offenses may not be deterred, defendant argues that this court must preclude the State from predicating armed violence on an aggravated battery committed with an identical mitigated mental state.

Aggravated battery, unlike either voluntary manslaughter or second degree murder, has no mitigating factors. The legislature has chosen to recognize only one defense to a charge of aggravated battery: reasonable belief that such force is necessary. (Ill. Rev. Stat. 1985, ch. 38, par. 7—1.) The aggravated battery statute does not currently recognize any mental state other than the mental state of intent or knowledge. (Ill. Rev. Stat. 1985, ch. 38, pars. 4—4, 4—5.) Whether the defendant's conduct is in fact the result of a mental state that, while intentional or knowing, is motivated by a sudden or intense passion or an actual but unreasonable belief in the need for self-defense is irrelevant for purposes of determining whether an aggravated battery has occurred.

Defendant asks this court to require the trial courts, when asked to do so by a defendant, to determine whether or not a mitigated mental state exists in an aggravated battery case before the trial court may enter judgment on an armed violence conviction predicated on the aggravated battery conviction. In our opinion, this is a legislative function.

The legislature may choose, if it so decides, to amend the aggravated battery statute to recognize that it is possible for a defendant to knowingly or intentionally cause great bodily harm while acting under either a sudden or intense passion or under an actual but unreasonable belief in the need for self-defense. The legislature may also choose, if it so decides, to amend the armed violence statute to clarify that armed violence may not be predicated on an offense which is motivated by a mitigated mental state even if the predicate offense allows for no consideration of whether or not a mitigated mental state exists.

Because this court considers that such a change in the law should be left to the legislature, we decline to require trial courts, when asked to do so by defendants, to determine whether a mitigated mental state exists before entering judgment on a conviction of armed violence predicated on aggravated battery.

## II

The defendant contends that his constitutional guarantee of a proportionate penalty was violated when he was sentenced as a Class X offender for an armed violence conviction predicated on the Class 3 aggravated battery conviction, when the jury failed to return a verdict on the charge of attempted murder, a Class X offense. When a jury fails to reach a verdict, nothing is inferred from this fact. We note, however, that there is nothing incongruous in a jury's finding a defendant

not guilty on an attempted murder charge and finding the same defendant guilty on an aggravated battery charge. Attempted murder requires the State to prove beyond a reasonable doubt that the defendant, with the specific intent to commit murder, does any act which constitutes a substantial step toward the commission of murder. (Ill. Rev. Stat. 1985, ch. 38, par. 8—4(a).) A jury may conclude that a defendant intentionally or knowingly caused great bodily harm to a victim, but did not have the specific intent to kill.

Defendant correctly asserts that attempted murder is a more serious offense than aggravated battery. When aggravated battery is committed while carrying a dangerous weapon, however, and the State secures a conviction for armed violence, the legislature has made the determination that the offense shall carry the same penalty as attempted murder.

It is well established that "the legislature has the authority to set the nature and extent of penalties. Courts will not interfere with such legislation unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable." (*People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 542.) The legislature, under the State's police power, has broad discretion to prescribe penalties for defined offenses. (*People v. Dixon* (1948), 400 Ill. 449, 453.) The court has "consistently stated that the standard of a proper exercise of police power is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare." *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159.

In *Alejos*, the court stated that the armed violence section was enacted " 'to respond emphatically to the growing incidence of violent crime.' " (*Alejos*, 97 Ill. 2d

at 507-08, quoting *People v. Graham* (1975), 25 Ill. App. 3d 853, 858.) The legislature has chosen to treat the presence of a weapon carried during the commission of a felony as an aggravating factor which upgrades the punishment available for it to Class X. (*Alejos*, 97 Ill. 2d at 508.) We are not prepared to say that this is beyond the power of the legislature to do.

For the foregoing reasons, the appellate court judgment is reversed and the circuit court judgment is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*